**James CONRAD and Carol Conrad, Appellants–Plaintiffs,**

v.

**UNIVERSAL FIRE & CASUALTY INSURANCE CO., Appellee–Defendant.**

No. 23A04–9603–CV–81.

Court of Appeals of Indiana.

Sept. 26, 1996.

Rehearing Denied Nov. 18, 1996.

Robert O. Williams, Williams Law Offices, Covington, for Appellants–Plaintiffs.

Jeffrey A. Doty, Kightlinger & Gray, Indianapolis, for Appellee–Defendant.

**OPINION**

CHEZEM, Judge.

*Case Summary*

Appellants-Plaintiffs, James and Carol Conrad (the "Conrads"), appeal from the trial court's grant of summary judgment in favor of Appellee-Defendant, Universal Fire

& Casualty Insurance Company ("Universal"). We affirm.

## Issues

The Conrads present one issue for our review which we divide into two:

I. Whether notice of cancellation, which was returned "unclaimed," was sufficient; and,

II. Whether Universal's return of the Conrads' premium after the date of cancellation should have rendered the cancellation ineffective.

## Facts and Procedural History

The Conrads owned a house in Fountain County, Indiana. On March 25, 1992[1], the Conrads paid a $423.00 premium to Universal for a one-year insurance policy on that property providing coverage for fire loss, effective March 30. On April 15, Universal inspected the premises and learned of defects which it found unacceptable. Approximately two weeks later, Universal sent a notice of policy cancellation to the Conrads and to their mortgagee bank. The notice was sent via certified mail and informed them that the cancellation was effective May 10. Although the bank received their notice on May 1, the Conrads' notice was returned to Universal "unclaimed."

On May 31, Universal noted that the Conrads were due a premium refund. On June 10, Universal sent a refund check to its agent, who received the check the following day. On July 23, the Conrads' property was destroyed by fire. Their premium refund check arrived on August 1. The Conrads filed a timely claim to Universal for their fire loss in the amount of $17,527.00. Universal denied the claim, stating that the policy was not in effect at the time of the loss.

The Conrads filed an action against Universal for breach of an insurance contract. Universal filed an answer and a motion for summary judgment. The Conrads filed a response alleging various issues of material fact. After the court granted Universal's motion, the Conrads filed a motion to correct errors which was denied.

## Discussion and Decision

### I. Notice of Cancellation

█ Essentially, the Conrads contend that because they did not receive the notice of cancellation and because Universal knew they did not receive the notice, the cancellation should not have been effective, and summary judgment should not have been granted. When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters specifically designated to the trial court by the moving party for the purposes of the motion for summary judgment. *Tom v. Voida*, 654 N.E.2d 776, 781 (Ind.Ct. App.1995), *trans. denied*. The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993); Ind.Trial Rule 56(C), (H). A trial court's grant of summary judgment is clothed with a presumption of validity. *Rosi*, 615 N.E.2d at 434.

The construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Mutual Security Life Ins. Co. v. Fidelity & Deposit Co. of Maryland*, 659 N.E.2d 1096, 1098 (Ind.Ct. App.1995), *trans. denied*. When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Hupp v. Canal Ins. Co.*, 654 N.E.2d 901, 903 (Ind.Ct.App. 1995), *reh. denied, trans. denied*. If language in an insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning and enforced according to its terms. *Mutual Security*, 659 N.E.2d at 1098.

In support of their argument, the Conrads submitted their affidavit which stated, "neither of them received notice of cancellation of

---

1. All relevant events occurred in 1992.

the policy from any source whatsoever and were not aware of any cancellation of the policy prior to the destruction of their residence by fire on July 23, 1992." (R. 69). The Conrads designated no evidence explaining why they did not claim the notice. In response, the affidavit of an underwriter for Universal stated, "[t]he certified notice of cancellation sent to the Conrads was returned unclaimed." (R. 26). A copy of the returned receipt and certified mail receipt to the Conrads was attached as an exhibit. There is no dispute that the notice was mailed.

The pertinent portion of the policy reads as follows:

> (b) We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. *Proof of mailing shall be sufficient proof of notice.*
>
> \* \* \* \* \* \*
>
> (2) when this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

(R. 48)(Emphasis added).

■ Where the parties specifically provide that the mailing of notice without more is sufficient proof of notice, and where such mailing was proved, they will be held to the contract and the notice of cancellation will be effective. *Farber v. Great American Ins. Co.*, 406 F.2d 1228, 1230 (7th Cir.1969). That is, in such a situation, "the issue of receipt is factually irrelevant and the issue . . . turns exclusively upon proof of mailing." *United Farm Bureau Mutual Ins. Co. v. Adams*, 145 Ind.App. 516, 522, 251 N.E.2d 696, 700 (1969). Thus, since there is no dispute that the notice of cancellation was mailed to the Conrads, whether they actually received the notice is immaterial. *See American Family Ins. Group v. Ford*, 155 Ind.App. 573, 577–78, 293 N.E.2d 524, 526 (1973), *reh. denied.* This is so regardless of whether or not the insured was actively avoiding the receipt of

mail. *Farber*, 406 F.2d at 1230. To reach any other conclusion would allow insureds to maintain coverage—in contravention of a policy's unambiguous language—by avoiding their mail. *Cf.* Ind.Trial Rule 5(B)(service deemed complete upon mailing; refusal to accept an offered or tendered document is a waiver of any objection to the sufficiency or adequacy of service of that document). Therefore, we are unpersuaded by this argument.

### II. Return of Premium

■ The Conrads also contend that Universal breached the insurance contract by failing to return their premium in a timely manner, and that such breach should make the cancellation ineffective. The Conrads cite *American Standard Ins. Co. v. Durham*, 403 N.E.2d 879 (Ind.Ct.App.1980) for the proposition that cancellation should not be effective until the return of the premium. The court in *Durham* stated:

> The function of contract rescission is to restore the parties to their pre-contract position, that is, the status quo. It is therefore basic that a party seeking rescission must return all consideration or benefits received under the contract. This means that when an insurance company seeks to rescind a policy on the grounds of a material misrepresentation in an application, generally it must first make a tender of the full amount of premiums paid under the policy. This is to restore the parties to the position they were in prior to the contract by returning the consideration the insurance company has received.

*Id.* at 881(citations omitted).

■ Rescission of contract has been defined as the "annulling, abrogation or unmaking of contract and the placing of the parties to it in status quo." BLACK'S LAW DICTIONARY 1174 (5th ed.1979). Cancellation has been defined as destroying the force, effectiveness, or validity of a contract. *Id.* at 187. Unfortunately, "to cancel" also means to rescind, abandon, or annul. *Id.* at 186. Indeed, prior Indiana decisions at times have used the terms rescind and cancel interchangeably. Here, however, we are guided by the unambiguous policy language which

provides: "When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our pro-rata table. When we cancel, the return premium will be pro-rata." (R. 48). Thus, according to the contract's terms, if the policy is *canceled*, the insured will not receive a refund of the entire premium. That is, neither the insured nor the insurer will be placed back in the status quo positions they occupied prior to the contract for insurance. Rather, the insured will receive whatever prorata portion remains of the premium. As such, the policy's language clarifies that what occurred between Universal and the Conrads was a cancellation—not a *Durham*-like rescission. Accordingly, *Durham* is inapposite.

We address an issue of first impression: whether it was necessary for Universal to return the premium to the Conrads before cancellation of their policy could take effect. Again, we are guided by the insurance contract's language. The relevant policy provision provides: "If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it *within a reasonable time after the date cancellation takes effect.*" (R. 48)(emphasis added). Rather than mandating that the premium be returned with the notice of cancellation or at some time prior to the "effective date" of cancellation in order for cancellation to take effect, the policy specifically provides that the pro-rata premium refund may be sent after the effective date of cancellation. Thus, according to the unambiguous language of the contract, while Universal was not precluded from sending the Conrads' premium refund at an earlier time, it need not have sent it until a reasonable time after May 10, 1992.

 Within thirty days of the effective date of cancellation, Universal sent the refund to its agent, who in turn was to forward the check to the Conrads. The Conrads received the check on August 1, 1992. Assuming arguendo that approximately eighty-one days is an unreasonable amount of time, we next examine the remedy for an untimely return of premium. The Conrads next argue

that the late return of the premium should negate the cancellation. However, the contract for insurance does not state that the failure to return the premium within a reasonable time retroactively negates the cancellation.

A review of cases from other jurisdictions which have addressed this issue indicates that the cancellation remains in effect, but a debtor-creditor relationship is created between the insurer and the insured. *See, e.g., Scapes v. Orr,* 2 Ill.App.2d 363, 119 N.E.2d 479, 481 (1954); *American Fire & Casualty Co. v. Combs,* 273 S.W.2d 37 (Ky.1954). In *Combs,* the court explained:

> The contract expressly gives the Insurance Company the right to cancel upon notice; return of the unearned premium is treated separately, and may take place as soon as practicable or within a reasonable time after notice of cancellation is delivered. Where, as here, there is no statute governing the particular type of insurance or requiring a different result, courts have generally enforced the terms of the policy contract as drawn, and have permitted the insurer to cancel upon proper notice without return of the unearned premium as a condition precedent....
>
> In any way we look at the matter, the balance in the hands of the company after the ·cancellation, merely creates a debtor creditor relationship....
>
> \* \* \* \* \* \*
>
> ... [T]he failure of the appellant to promptly return the unearned premium to the appellee, merely created a debtor-creditor relationship between the parties. The appellee would be entitled to recover from the appellant that part of the premium which is unearned, with interest. However, appellee cannot successfully maintain that the cancellation of the policy was ineffectual for that reason.

*Id.* at 38–39. Because Indiana has neither a statute governing the issue in question nor case law requiring a different result, and because we agree with the reasoning of *Combs* and *Scapes,* we adopt that approach in the present situation.

Accordingly, Universal's tardy tendering of the premium did not retroactively negate its valid cancellation. Instead, Universal's failure to promptly return the premium merely created a debtor-creditor relationship which ended when the Conrads received their premium refund. Thus, the trial court was correct in enforcing the unambiguous terms of the policy and granting Universal's motion for summary judgment.

Affirmed.

RILEY and STATON, JJ., concur.